UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
LISA PANZICA, individually and on behalf
of all others similarly situated,

                        Plaintiff,

                                       **OPINION AND ORDER**
              -against-                            CV 05-2595 (ARL)

MAS-MAZ, INC. d/b/a CORNERSTONE PUB &
RESTAURANT and JANE MASSARO,

                        Defendants.
----------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Before the court are cross-motions for motion for summary judgment pursuant to Fed. R. Civ. P. 56 on plaintiff Lisa Panzica's claims against the defendants under the Americans with Disabilities Act ("ADA") and related states statutes. The parties have consented to the undersigned exercising plenary jurisdiction over this action pursuant to 28 U.S.C. § 636 (c). For the reasons set forth below, the plaintiff's motion is denied and the defendants' motion is granted.

**I.    FACTS**

      Plaintiff, Lisa Panzica, commenced this putative class action on May 27, 2005 pursuant to Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182, the New York Human Rights Law, N.Y. Exec. Law § 296(2), and the New York Civil Rights Law, §§ 40-c and 40-d, which prohibit disability discrimination in places of public accommodation. Plaintiff, who suffers from Spinal Atrophy requiring her to use a wheelchair, alleges that the defendants Mas-Maz, Inc., d/b/a Cornerstone Pub & Restaurant ("Cornerstone" or "the restaurant") and Jane Massaro ("Massaro") (together, "the defendants") violated these laws in failing to make the restaurant

accessible to wheelchair-bound patrons. (Compl. at ¶ 12).

The property at issue, 288 Jericho Turnpike, Mineola, New York, 11501, was owned by defendant Massaro from November 1997 until January 2006. (Defs' Rule 56.1 Statement at ¶ 1, Massaro Aff. at ¶ 2). Defendant Mas-Maz, Inc., d/b/a Cornerstone Pub & Restaurant, has operated the Cornerstone at that location since 1989. (Massaro Aff. at ¶ 4).

In September 2004, the plaintiff drove to the Cornerstone together with her companion, Randy Brodsky, and parked alongside the curb on Jericho Turnpike directly in front of the restaurant's front entrance. (Panzica Dep. at 16). From her vehicle, the plaintiff observed an approximately seven to ten inch high step at the entrance to the restaurant and that the handle on the door was at an "inappropriate" height. (Id. at 16-17, 20, 63-64; Panzica Aff. at ¶5). Plaintiff also claims to have observed from her vehicle and through a window that the tables and bar stool-type chairs inside the restaurant appeared elevated and would therefore be inaccessible to her. (Panzica Aff. at ¶6). Believing that she would be unable to enter the establishment, the plaintiff drove off without exiting her vehicle or attempting to determine if there was an alternate entrance. (Panzica Dep. at 17-18). Had she or her companion done so, the plaintiff would have realized that there was a ramped side door to the restaurant providing handicapped access. Defs' 56.1 Statement at ¶ 18; Pl's Response and Objections to Defs' 56.1 Statement at ¶ 19-21). In addition, there was a doorbell located at the side door for use in the event an individual required assistance entering the restaurant. (Pl's Response and Objections to Defs' 56.1 Statement at ¶ 19-21; Mazzella Aff. at ¶ 7). Nevertheless, the plaintiff filed her complaint in May, 2005 alleging that architectural barriers within and around the restaurant denied her access to the restaurant and deterred her from entering.

Plaintiff did not return to the Cornerstone until March 20, 2006 which she did in her capacity as a litigant pursuant to a Notice of Inspection. (Panzica Aff. at ¶ 4). Based on this inspection, the plaintiff concluded that the front and side entrances and the men's and women's bathrooms have architectural barriers and are noncompliant with the Americans with Disabilities Act Accessibility Guidelines ("ADAAG"). The plaintiff's expert, Carlos Rivera, inspected the restaurant on June 13, 2006 and found in addition to the areas identified by the plaintiff, a 3/4 inch elevation between the floors in the main bar area and an adjacent recreation room which he claimed does not comply with the ADAAG.

## II. Panzica's Claim of Disability Discrimination

Panzica claims that she was discriminated against on the basis of her disability in violation of the Americans with Disabilities Act ("the ADA"), 42 U.S.C. §§ 12181 et seq.; the New York State Human Rights Law (the "NYSHRL"), N.Y. Executive Law § 296 (McKinney's 2005); and the New York Civil Rights Law, §§ 40-c and 40-d.[1] The ADA provides a private right of action only for injunctive relief. 42 U.S.C. § 12188 (a). While damages are not available, a successful plaintiff may be entitled to an award of reasonable attorney's fees and costs. Id.

### A. Standing

To begin with, the court addresses the defendants' challenge to the plaintiff's standing to maintain this action. According to the defendants, the plaintiff lacks standing because she had

---

[1] Claims for disability discrimination arising under the New York State Human Rights Law or New York Civil Rights Law § 40-c are governed by the same legal standards as federal ADA claims. Hartnett v. Fielding Graduate Institute, 400 F. Supp.2d 570, 581 (S.D.N.Y. 2005); Samper v. Univ. of Rochester, 144 A.D.2d 940, 535 N.Y.S.2d 281 (4th Dep't 1988).

3

suffered no injury-in-fact at the time she filed her complaint. (Defs. Mem. at 8). The court agrees.

"Federal courts have an obligation to ensure that standing exists and should resolve questions of Article III jurisdiction before reaching the merits of a plaintiff's claim." Roe v. Johnson, 334 F. Supp.2d 415, 420 (S.D.N.Y. 2004), citing N.Y. Pub. Interest Research Group v. Whitman, 321 F.3d 316, 324-25 (2d Cir. 2003); LaFleur v. Whitman, 300 F.3d 256, 268 (2d Cir. 2002). Under Article III, § 2 of the Constitution, the federal courts have jurisdiction over a dispute only if there is an actual "case" or "controversy." Raines v. Byrd, 521 U.S. 811, 117 S. Ct. 2312 (1997). "One element of the case-or-controversy requirement is that [the plaintiff], based on [her] complaint, must establish that [she] has standing to sue." Id. at 818, 117 S. Ct. 2317, citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136-37 (1992) (plaintiff bears the burden of establishing standing). Article III standing requires, *inter alia*, that the "plaintiff must have suffered "an injury in fact-an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560-561. The injury-in-fact element is determined by the facts in existence at the time the plaintiff filed the lawsuit. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 170, 120 S. Ct. 693 (2000); Small v. General Nutrition Companies, Inc., 388 F. Supp.2d 83, 86 (E.D.N.Y. 2005). To meet the "concrete and particularized" prong of the injury-in-fact element, "the injury must affect the plaintiff in a personal and individual way." Lujan, 504 U.S. at 560 n. 1, 112 S. Ct. 2130; Roe, 334 F. Supp.2d at 420.

In the ADA context, a plaintiff suffers an injury-in-fact if she personally encounters the barrier to access complained of, or she has actual knowledge of the barrier complained of and has

been deterred from visiting the public accommodation because of that barrier. Disabled in Action of Metropolitan New York v. Trump International Hotel & Tower, No. Civ. 01-5518 (MBM), 2003 WL 1751785, at *7 (S.D.N.Y. April 2, 2003).

In this case, it is undisputed that there was a ramped handicapped accessible side entry which plaintiff simply failed to notice when she visited in September 2004. It is also undisputed that the Cornerstone is located on a corner and the front and side entrances each face a public street suggesting that had the plaintiff simply turned the corner, she would have seen this side entrance. Thus, at the point plaintiff filed her discrimination complaint it was based on her mistaken subjective belief that she was denied entry because there was no handicapped accessible entryway.[2] As such, plaintiff's claimed injury was not factually correct making it impossible for the court to conclude that she suffered an injury-in-fact. Los Angeles v. Lyons, 461 U.S. 95, 107 at n.8, 103 S. Ct. 1660, 1668 (1983) ("[i]t is the reality of the threat of [impending] injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions.").[3]

Moreover to the extent plaintiff claimed the interior tables were inaccessible, this assertion was based on sheer conjecture. Plaintiff made this claim based only on what she could observe through a window from inside her car. From this vantage point she simply had no way of knowing whether there was handicapped accessible seating making her "injury" in this regard

---

[2]Whether plaintiff could have gained access through the side door had she seen it is an open question. Plaintiff's inspection in 2006 simply indicates that a ramp is necessary to access the side door.

[3]Significantly, by 2006 any question with respect to the side door's accessibility and plaintiff's entitlement to injunctive relief in this respect was rendered moot by virtue of the modifications to the front door which made it fully accessible. See supra at page 12.

purely speculative. Lujan, 504 U.S. at 560, 112 S. Ct. at 2136 (plaintiff's asserted injury must not be "conjectural or hypothetical"); see also Daimler Chrysler Corp. v. Cuno, 126 S. Ct. 1854, 1862-63 (2006) (no standing where alleged injury was "conjectural or hypothetical"); Jaghory v. New York State Dep't of Educ., 131 F.3d 326 (2d Cir. 1997) ("The keystone for determining injury-in-fact is the requirement that it be "distinct and palpable" and, conversely, that it not be "abstract" or "conjectural" or "hypothetical") (citations omitted); Thompson v. American Bar Assoc., No. Civ. 05-1493 (CFD), 2007 WL 987807, at *5 (D. Conn. March 30, 2007) (no standing where plaintiff's alleged injury was hypothetical). Indeed, plaintiff appears to have abandoned this claim as her expert report makes no note of a violation in this respect. In re MTBE Products Liability Litig., 458 F. Supp.2d 149, 153 (S.D.N.Y. 2006) ("[A]t the summary judgment stage, a plaintiff 'can no longer rest on mere allegations of injury, but must set forth specific facts . . . which for purposes of the summary judgment motion will be taken as true."), quoting Lujan, 504 U.S. at 561, 112 S. Ct. 2130. Having reviewed the record and applicable law, the court finds that the plaintiff did not have standing to file this action and summary judgment must be granted in defendants' favor.

**B. Merits**

Even assuming arguendo that the plaintiff had standing, the court finds summary judgment would still be warranted. "'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" Jamaica Ash & Rubbish Removal Co. v. Ferguson, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting In re Blackwood Assocs., L.P. 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). In

6

deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. See Holt v. KMI-Continental, Inc., 95 F.3d 123, 129 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" B.F. Goodrich v. Betkoski, 99 F.3d 505, 522 (2d Cir. 1996) (quoting Gallo v. Prudential Residential Servs., L.P., 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." Jamaica Ash & Rubbish, 85 F. Supp. 2d at 180 (quoting Celotex, 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Marks v. New York Univ., 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

"[T]he summary judgment standard applies with equal force to discrimination cases as it

7

does to other cases." Faruq v. Wal-Mart Stores, Inc., 2006 U.S. Dist. LEXIS 4676, *12 (W.D.N.Y. Jan. 23, 2006). "The salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to commercial or other areas of litigation." Ashton v. Pall Corp., 32 F. Supp. 2d 82, 87 (E.D.N.Y. 1999) (quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985) (additional quotation marks omitted)). Thus, "[t]hough caution must be exercised in granting summary judgment where motive is genuinely in issue . . . [it] remains available for the dismissal of discrimination claims in cases lacking genuine issues of material fact." McLee v. Chrysler Corp., 109 F.3d 130, 135 (2d Cir. 1997) (internal citations omitted). With these standards in mind, the court addresses the cross-motions.

To establish liability under Title III of the ADA, the plaintiff must prove that she: (1) has a disability; (2) the defendants are owners or operators of a place of public accommodation; and (3) the defendants discriminated against her by denying her a full and equal opportunity to participate in their facility on the basis of her disability. Stan v. Wal-Mart Stores, Inc., 111 F. Supp.2d 119, 124 (N.D.N.Y. 2000). For purposes of this motion, only the last element is in dispute. In this regard, the plaintiff claims that the defendants' restaurant contains numerous architectural barriers that discriminate against persons in wheelchairs.

The degree of accountability for architectural barriers depends on whether the place of public accommodation was newly constructed and first occupied after January 25, 1993, underwent renovations or alterations that affect usability after that date, or existed prior to that date. See 42 U.S.C. §§ 12182(b)(2)(A)(iv), (v); 12183(a). Here, there is no dispute that because the Cornerstone existed prior to January 25, 1993, the ADA requires only that such facilities remove architectural and structural barriers if such removal is "readily achievable." 42 U.S.C.

§12182(b)(2)(A)(4); see 28 C.F.R. § 36.304(a). The term "readily achievable" is defined by the statute to mean "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9).

In establishing her disability discrimination claim, the plaintiff bears the initial burden of identifying both the existence of an architectural barrier and a method of removing that barrier that is "readily achievable." Roberts v. Royal Atlantic Corp., 445 F. Supp.2d 239 (E.D.N.Y. 2006) (Plaintiff bears the burden of establishing that the modifications sought with respect to entry and access to the restaurant and its facilities are readily achievable); Pascuiti v. New York Yankees, No. 98 Civ. 8186 (SAS), 1999 WL 1102748, at *4, (S.D.N.Y. Dec. 6, 1999), citing 42 U.S.C. §12181(9). In meeting the second prong of this burden, a plaintiff "must consider the four factors identified in §12181(9) and proffer evidence, including expert testimony, as to the ease and inexpensiveness of their proposed method of barrier removal." Pascuiti, 1999 WL 1102748 at *4. Once this burden is met, it is up to the defendants to rebut that showing and prove that the suggested method is not readily achievable. Id. The defendants bear the ultimate burden of convincing the trier of fact by a preponderance of the evidence that the suggested method of barrier removal is, more likely than not, too difficult and too expensive to be "readily achievable." 42 U.S.C. 12182(b)(2)(A)(v). Guided by these standards, the court now turns to the substance of the plaintiff's claims.

Plaintiff has submitted the report of Carlos Rivera, a Senior Designer, Accessibility Services, from the United Spinal Association, who performed an accessibility review of the Cornerstone on June 13, 2006. Mr. Rivera is an International Code Council certified Accessibility Inspector/Plan examiner, holds a Bachelor of Science degree in Interior Design and

has completed architectural studies programs at the Parsons School of Design and Queens College. He has been associated with the United Spinal Association since 1998 and has extensive experience evaluating, analyzing and determining accessibility features in commercial facilities. In light of these credentials, plaintiff contends that Mr. Rivera is qualified as an expert in the field of accessibility for commercial facilities. Mr. Rivera's report concludes that the side entrance, the main bar area and the men's and women's restrooms have specific architectural barriers and provides suggestions and recommendations for their removal. See Rivera Report, annexed to the Panzica Aff. as "Ex. D."

The defendants challenge the Rivera report, arguing that the report should be precluded for several reasons. First, the defendants argue that the report is improper because it was not prepared by a qualified expert and does not provide any expert information or analysis. Second, the defendants object to the report insofar as it seeks to add new claims as to purported barriers (such as to the bathrooms) that were never identified or substantiated during discovery. Finally, defendants argue that the report is irrelevant because the ADAAG requirements cited in the report apply only to newly designed or newly constructed buildings and facilities and altered portions of existing buildings. Thus, the defendants contend that the recommendations referenced in the report are inapplicable to the Cornerstone.

For purposes of this motion and after consideration of the defendants' arguments, the court declines to preclude the report. While the report does largely include measurements of locations within the Cornerstone that could have be taken by a layperson, such fact does not warrant an order of preclusion. Similarly, there is no basis for the defendants' assertion that the report seeks to add new claims as to purported barriers that were never identified during

discovery. In fact, the complaint put the defendants on notice that the plaintiff's claims of inaccessibilty included but were not limited to the entrances, bathrooms and public use tables. Compl. at ¶ 30 (a)-(e). Moreover, given that the defendants deposed Mr. Rivera, there can be no genuine dispute that they had the opportunity to discover the scope of the plaintiff's claims. Finally, the defendants' argument that the Rivera report should be precluded because the recommendations referenced in the report are inapplicable to the Cornerstone similarly misses the mark. The plaintiff may compare the Cornerstone's facilities to the requirements laid out in the ADAAG as part of her effort to establish barriers to access. Pascuiti v. New York Yankees, 87 F. Supp.2d 221 (S.D.N.Y. 1999) ("[E]ven though only new construction and alterations must comply with the [AGAAG] Standards, those Standards nevertheless provide valuable guidance for determining whether an existing facility contains architectural barriers."). Accordingly, the court overrules the defendants' objection to the Rivera report. Given this ruling, the court considers whether the plaintiff's burden of identifying the existence of an architectural barrier and suggesting a method of removing that barrier that is readily achievable is satisfied.

As noted above, one way to evaluate the first of these issues is to compare the physical features of the facility with the technical requirements of the ADAAG. Gathright-Dietrich v. Atlanta Landmarks, Inc., 435 F. Supp.2d 1217, 1226 (N.D. Ga. 2005), aff'd. 452 F.3d 1269 (11th Cir. 2006) (stating that the ADAAG may be used to determine whether a barrier exists); Access Now, Inc. v. Southern Fla. Stadium Corp., 161 F. Supp.2d 1357, 1368 (S.D. Fla. 2001) (quoting Pascuiti v. N.Y. Yankees, 87 F. Supp.2d 221, 226 (S.D.N.Y. 1999), which recognizes ADAAG as "valuable guidance for determining whether an existing facility contains architectural barriers."); see also Wilson v. Pier 1 Imports, Inc., 439 F. Supp.2d 1054 (E.D. Cal. 2006) ([N]on-

11

compliance with ADAAG standards can demonstrate a *prima facie* barrier").

The plaintiff contends that following architectural barriers exist at the Cornerstone:

i. Side Entrance

According to the plaintiff, the side entrance is not accessible because there is a four inch vertical difference between the main floor and the sidewalk. See Rivera Report at page 2. Defendants argue that it is entitled to summary judgment on this issue because the Cornerstone has an accessible entrance. The court agrees.

It is undisputed that during the pendency of this action the front entry had to be reconstructed after two vehicles crashed into the front door of the restaurant. As a result, the defendants reconstructed the front entrance in August 2006 and have made it accessible and compliant with the ADAAG guidelines. The plaintiff does not dispute that the front door is presently accessible. The ADAAG 4.3.2(1) require that a place of public accommodation have "[a]t least one accessible route." Because it is undisputed that the front entrance is accessible, there is no genuine issue of material fact regarding whether a barrier to entry exists at the Cornerstone. Accordingly, the court grants summary judgment to the defendants on this claim. Martinez v. Home Depot USA, Inc., 2007 WL 926808, at *4 (E.D. Cal. March 27, 2007).

ii. Main Bar Area

Plaintiff claims that the 3/4 inch elevation difference between the floors in the main bar area and the recreation room is an architectural barrier in violation of ADAAG 4.3.8. (Rivera Report at page 4). Defendants do not directly respond to this allegation. Rather, defendants generally contend that they "have always provided individuals with disabilities with an equal opportunity to use the Cornerstone and have always provided even-handed treatment." (Aff. of

Phillip Mazzella at ¶ 18).

ADAAG 4.3.8 addresses changes in levels along an accessible route and requires that where an accessible route has changes in level greater than ½ inch, "then a curb, ramp, elevator, or platform lift [] shall be provided." Here, there is no dispute that there is a 3/4 inch elevation between the floor levels between the main bar area and the recreation room and that no curb, ramp, elevator, or platform lift is provided. Accordingly, the court finds that the plaintiff has met her burden of establishing that an architectural barrier exists in this regard. The issue of whether a remedy is readily achievable is addressed below.

### iii. Bathrooms

Plaintiff claims that the men's bathroom has the following architectural barriers: (1) the lavatory apron provides a 23-inch clearance above the floor in violation of ADAAG 4.19.2 which requires a clearance of at least 29 inches; (2) the faucet requires twisting of the wrist to operate in violation of ADAAG 4.19.5; (3) the drain and water pipes lack insulation in violation of ADAAG 4.19.4; (4) the toilet stall is 38 inches wide and 86 inches long in violation of ADAAG 4.17.3 (Fig. 30a); (5) the toilet stall provides only one side grab bar and no rear wall grab bar in violation of ADAAG 4.17.6; (6) the paper dispenser is mounted at 55-inches above the finished floor in violation of ADAAG 4.2.5 which requires that its highest operable part be no higher than 48 inches; and (7) the urinals are 23 inches above the floor in violation of ADAAG 4.18.2 which requires that the rim be at a maximum of 17 inches above the floor.

She also claims that the women's bathroom has the following architectural barriers: (1) the lavatory apron provides a 24-inch clearance above the floor in violation of ADAAG 4.19.2 which requires a clearance of at least 29 inches; (2) one of the two sinks is inaccessible

13

because it lacks a lever-type faucet in violation of ADAAG 4.19.5; (3) the drain and hot water pipes lack insulation in violation of ADAAG 4.19.4; (4) the toilet stalls are not 38 inches wide and 86 inches long in violation of ADAAG 4.17.3 (Fig. 30a); (5) the toilet stalls do not provide a rear grab bar in violation of 4.17.6; (6) the soap dispenser is mounted at 52-inches above the finished floor in violation of ADAAG 4.2.5, 4.27 which requires that its highest operable part be no higher than 48 inches; and (7) the water closets are 20 inches high in violation of ADAAG 4.16.3 which requires that the rim be at a maximum of 17 inches above the floor. While the plaintiff seeks to include additional alleged barriers first identified in her June 21, 2006 affidavit, these barriers were identified well outside the April 11, 2006 discovery deadline. See Scheduling Order, dated November 8, 2005. While the court permitted the parties to conduct expert discovery through August 31, 2006, the court's order was expressly limited in this regard. See Order, dated May 31, 2006. Thus, the court considers only those alleged architectural barriers that were identified within the discovery period. Eiden v. Home Depot, No. Civ. 04-977(LKK), 2006 WL 1490418, *6 (E.D. Cal. May 26, 2006) ("Because the court's scheduling order made clear that discovery would close on October 4, 2005, plaintiff is precluded from asserting any further ADA claims after this deadline . . . .").

Given the plaintiff's tacit admission that one of the two sinks in the women's restroom is accessible, this aspect of her claim is dismissed. Sanford v. Del Taco, 2006 WL 1310318, at *2 (E.D. Cal. May 12, 2006) (rejecting Title III ADA claim and finding no architectural barrier where restaurant had wheelchair inaccessible booths because accessible seating was also provided). With regard to the other alleged bathroom violations, the defendants rely on the affidavit of Phillip Mazzella who generally states that "each bathroom has one handicap

14

accessible toilet stall with appropriate grab bars" and that the "sinks are situated at an appropriate height and with hardware that is appropriately shaped." (Mazzella Aff. at ¶¶ 12-13). Defendants also rely on the fact that, in 1988, the Village of Mineola approved a plumbing application and noted the presence of handicap accessible fixtures in the bathrooms. (Id. at 14, and Ex. H. annexed thereto.). The plumbing application, approved over fourteen years ago and which predates the ADA and the promulgation of the ADAAG is hardly dispositive of whether the defendants' bathrooms are currently accessible. Defendants have not provided any convincing argument as to why the Cornerstone's noncompliance with the ADAAG's technical standard do not present architectural barriers to wheelchair bound individuals such as the plaintiff. Thus, the court finds that the plaintiff has met her burden of establishing that architectural barriers exist in the bathrooms.

Having found that architectural barriers exist, the next step is determining whether the removal of these barriers is "readily achievable." The statute lists factors to be considered in evaluating whether removal of an architectural barrier is readily achievable. See 42 U.S.C. § 12181(9). The pertinent factors are: 1) the nature and cost of the required action; 2) the overall financial resources of the facility; 3) the number of employees at the facility; 4) the effect of removal on expenses and resources or the impact upon operation of the facility; 5) the overall financial resources of the responsible entity; 6) the overall size of the business with respect to the number of employees; 7) the number, type, and location of the entity's facilities; 8) the type of operation of the entity, including the composition, structure, and functions of the workforce; 9) the geographic separateness and relationship of the facility to the responsible entity. 42 U.S.C. § 12181(9); Gathright Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1273 (11th Cir. 2006);

Colo. Cross Disability Coal. v. Hermanson Family Ltd. P'ship I, 264 F.3d 999, 1002 (10th Cir. 2001). Whether the removal of an architectural barrier is readily achievable is to be decided on a case-by-case basis utilizing all of the statutory factors. See 28 C.F.R. pt. 36, app. B, Section-By-Section Analysis and Response to Comments, § 36.304.

Here, although plaintiff suggests the removal of these barriers, she fails to address whether this is readily achievable. For example, plaintiff's expert suggests that the toilet stall be made wider in each bathroom. It appears that the net effect of this change in each bathroom would be to reduce the number of toilet stalls from two to one. Plaintiff's expert acknowledges that this reduction may be prohibited under State and Local codes as toilet stall requirements are tied to occupancy allowances. Although a reduction in the number of toilet stalls would clearly have a significant impact on defendants' business operations, plaintiff makes no attempt to address this issue. Plaintiff thus has failed to meet her burden of proving that the removal of this barrier can be readily accomplished. Pascuiti, 1999 WL 1102748, at *4-5.

In addition, plaintiff's expert suggests that the nonconforming fixtures in the bathrooms be remounted or replaced so as to comply with the ADAAG's technical requirements and that the elevation between the main bar area and the recreation room be remedied by simply installing a ramp. However, no attempt is made to address any of the statutory factors that the court must consider in determining whether these changes are readily achievable. Pascuiti, 1999 WL 1102748, at * 5. While the plaintiff correctly contends that the defendants are precluded from asserting cost as a defense, wholly absent from the plaintiff's submission is any analysis of the feasibility or difficulty of the suggested modifications or their impact upon the Cornerstone's business operation. Spector, 545 U.S. at 135, 125 S. Ct. at 2180 (noting that the considerations

extend to more than just cost). In the absence of such proof, the plaintiff has failed to meet her burden of production for barrier removal. Gathright-Dietrich v. Atlanta Landmarks, Inc., 452 F.3d 1269, 1274-75 (11th Cir. 2006). Having failed to meet her burden in this regard, there is no genuine issue of material fact for trial and the court grants summary judgment in defendants' favor.

### III. State Law Claims

Given that none of the alleged violations of the ADA survive defendants' summary judgment motion, the action is now without any federal claim. Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over the remaining state law claims.

### CONCLUSION

For the reasons set forth above, the plaintiff's motion for summary judgment is denied and the defendants' motion for summary judgment is granted. The clerk is directed to close this case.

Dated: Central Islip, New York  _____/s/_____
      June 11, 2007        ARLENE ROSARIO LINDSAY
                      United States Magistrate Judge